UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RORY BRIAN HORN,          )
                                  )
     Plaintiff              )
                                  )
v.                             )     Case No.: 1:10-CV-253
                                  )     (Collier/Carter)
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,  )
                                  )
     Defendant          )

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for judgment on the administrative record (Doc. 8) and Defendant's Motion for Summary Judgment (Doc. 12).

For the reasons stated herein, I RECOMMEND the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

## Application For Benefits

Plaintiff applied for DIB on November 3, 2006, alleging he became disabled on September 10, 2006, due to pain in his back and knees, osteoarthritis, high blood pressure, and

problems with his feet (Tr. 120-25, 145, 148).[1]  The Agency denied Plaintiff's claim initially and

upon reconsideration (Tr. 51, 68-72).  On January 13, 2009, ALJ Michael D. Mance conducted a

hearing.  Plaintiff, who was represented by an attorney, testified, as did a vocational expert (VE).

On February 27, 2009, the ALJ found Plaintiff was not disabled because he could perform a

significant number of jobs in the economy (Tr. 7-30, 55-65).  The ALJ's decision became the

final Agency decision when the Appeals Council denied review (Tr. 1-3).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason

of a medically determinable physical or mental impairment which has lasted or can be expected

to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The burden

of proof in a claim for Social Security benefits is upon the claimant to show disability.  *Barnes v.

Sec'y of Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613

F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).  Once,

however, the plaintiff makes a prima facie case he cannot return to his former occupation, the

burden shifts to the Commissioner to show there is work in the national economy which he can

perform considering his age, education and work experience.  *Richardson v. Sec'y of Health and

Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th

Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner

are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v.*

---

[1] Plaintiff previously applied for DIB, which was denied by an ALJ on September 9, 2006
(Tr. 39-47).  That application is not at issue.

*Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence

on the other side, if there is evidence to support the Commissioner's findings, the Commissioner's

findings must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court

may not reweigh the evidence and substitute its own judgment for that of the Commissioner even

if it finds the evidence preponderates against the Commissioner's decision. *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Crisp v. Sec'y of Health and Human Servs.*, 790

F.2d 450 n. 4 (6th Cir. 1986). The Commissioner's findings are not subject to reversal merely

because substantial evidence exists in the record to support a different conclusion. It presupposes

there is a zone of choice within which the decision makers can go either way, without

interference by the courts. *Felisky v. Bowen*, 35 F.3d 1037 (6th Cir. 1994), citing *Mullen v.*

*Bowen*, 800 F.2d 535, 548 (6th Cir. 1986), quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th

Cir. 1984).

As the basis of the February 27, 2009 administrative decision that plaintiff was not

disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since September 10, 2006, the alleged onset date (20 CFR 404.1571 *et seq*.)

3. The claimant has the "severe" impairments of degenerative disc disease/degenerative joint disease lumbar spine, and depression (20 CFR 404.1521 *et seq*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

3

5.    After careful consideration of the entire record, I find that the
      claimant has the residual functional capacity to perform light work
      as defined in 20 CFR 404.1567(b) and is limited to occasionally
      climbing stairs and ramps; never climbing ropes, ladders and
      scaffolds; and occasionally balancing, stooping, kneeling,
      crouching and crawling.  He should avoid concentrated exposure to
      extreme cold, wetness, unprotected heights, and hazardous
      machinery.  He would require a job which allows him to alternate
      sitting/standing up to every 30 minutes.  He is limited to
      performing no more than simple tasks.

6.    The claimant is unable to perform any past relevant work (20 CFR
      404.1565).

7.    The claimant was born on _____, __ 1956 and is 52 years old,
      which is defined as an individual closely approaching advanced
      age (20 CFR 404.1563).

8.    The claimant has more than a high school education and is able to
      communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of
      disability because using the Medical-Vocational Rules as a
      framework supports a finding that the claimant is "not disabled,"
      whether or not the claimant has transferable job skills (See SSR
      82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and
      residual functional capacity, there are jobs that exist in significant
      numbers in the national economy that the claimant can perform (20
      CFR 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the
      Social Security Act, from September 10, 2006 through the date of
      this decision (20 CFR 404.1520(g)).

(Tr. 57-65).  Such findings by the Commissioner are conclusive if they are supported by

substantial evidence in the record. *Shaw v. Schweiker*, 730 F.2d 462 (6th Cir. 1984); *Wokojance

v. Weinberger*, 513 F.2d 210 (6th Cir. 1975).  The sole function of this Court is to determine

4

whether the Commissioner's decision is based upon such evidence. *Plank v. Sec'y of Health and Human Servs.*, 734 F.2d 1174 (6th Cir. 1984); *Le Master v. Weinberger*, 533 F.2d 337 (6th Cir. 1976). The Supreme Court has defined substantial evidence as " . . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. at 401, (*quoting Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

## **Issues Raised**

Plaintiff raises the following issues:

A.     The ALJ erred by finding that the Plaintiff has the Residual Functional Capacity (RFC) to perform light work.

B.     The ALJ erred by failing to consider all the evidence before him.

C.     The ALJ erred by not giving proper weight to the opinions of the treating physicians in accordance with 20 C.F.R. §404.1527.

D.     The ALJ committed reversible error in failing to comply with Social Security Ruling 96-7p and 20 C.F.R. §404.1529 in evaluating the claimant's subjective limitations.

E.     The ALJ committed reversible error in failing to correctly evaluate Plaintiff's mental conditions in accordance with 20 C.F.R. §§404.1520a and 404.1545(c).

F.     The ALJ erred in relying on the testimony of the vocational expert.

G.     The ALJ erred by not fully developing the record.

## **Statement of Relevant Facts**

A.     Vocational Background

Plaintiff was considered a "person closely approaching advanced age" on the date of the ALJ's decision (Tr. 50-51); 20 C.F.R. § 404.1563(d). He had a GED and past work experience as a truck or bus driver, a correctional officer, and a janitor (Tr. 12, 150, 153, 170-77, 197).

5

B.     Plaintiff's Statements

In a functional report completed in November 2006, Plaintiff reported he lived in a house with his family (Tr. 157). He read books, watched television, attended physical therapy, took hot baths, and took medication for back pain and high blood pressure (Tr. 157). He prepared simple meals such as sandwiches and frozen dinners daily (Tr. 158). At times, he needed help tying his shoes, getting in and out of the bathtub, and getting on and off the toilet (Tr. 158). He goes out once a day and drives alone and reads a book every one or two weeks (Tr. 160-61). Due to pain in his back and feet, he has limited ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs (Tr. 162).

At the hearing, Plaintiff testified he lived alone (Tr. 12). His wife passed away in March 2008 (Tr. 12). He indicated he last worked in August 2005 (Tr. 12). He left his job as a truck driver because of back pain and medication (Tr. 12-13). He described the pain as sharp and numbing, and it spread to his left side and down to his thigh and calf (Tr. 18). Cold weather aggravates the pain (Tr. 18). Plaintiff takes Cyclobenzaprine, Tramadol, Ibuprofen, and Naprosyn (naproxen); he has undergone intravenous injections; and he has used Lidoderm patches for his back pain (Tr. 14). He has experienced nausea, dizziness, and trouble concentrating as side effects of the medication (Tr. 15). He stated the medication helps relieve the pain (Tr. 19). He indicated that no doctor has recommended surgery (Tr. 15). Plaintiff indicated he saw a psychiatrist at the Veterans Administration (VA) for grief over the death of his wife and because of his inability to go out and do anything (Tr. 17).

Plaintiff testified he does nothing but sleep and rest during the day (Tr. 16). His godmothers, who live across from him, clean, cook, and shop for him (Tr. 16). He had a CDL

6

(Commercial Drivers License), which would expire in November 2010; he stated he kept the license just to have it (Tr. 13). When using the CDL, he is not supposed to take medication (Tr. 13).

Plaintiff testified he could walk for about five or ten feet before he had to sit down and rest; he could sit about five or ten minutes, then his back started hurting; and he thought he could lift five to ten pounds (Tr. 17). He testified he wore a back brace, which helped relieve a lot of the pain (Tr. 17). He had been using the brace about four or five months (Tr. 19). He stated he used a cane to lift himself up and out of the chair, and when the weather was cold and his pain was "real bad" he used the cane for walking as well (Tr. 18). He had been using the cane for almost one year (Tr. 19). He indicated the cane was prescribed by the VA (Tr. 203). He testified that the VA had equipped his house with handicap equipment in the tub and bathroom, in order to help him get in and out of the tub as well as get up and down off of the commode (Tr. 19).

C.     Relevant Medical Evidence

Charles Nester, M.D.

Plaintiff treated with Dr. Nester for low back pain in September 2005 (Tr. 344, 455, 608). According to Plaintiff's history, he originally injured his back in 1983, while in the military. Then, he injured his back again around 1986 (Tr. 455).

On November 1, 2006, Plaintiff saw Dr. Nester for his back pain (Tr. 357). He also complained of shooting pain down his left side two or three times, for a short while. According to Dr. Nester's note, Plaintiff usually sought care at the VA but was interested in a different approach to his back problems. On examination, Plaintiff had paraspinous muscle tenderness and softness at L3-4 level and positive straight leg raising on the left. His reflexes were

7

symmetrical. Dr. Nester diagnosed low back pain. He ordered physical therapy and Tramadol, Lidoderm patch and Ben Gay patch to help control Plaintiff's symptoms. He was uncertain as to previous diagnostic testing (Tr. 357).

On January 22, 2007, Plaintiff saw Dr. Nester for recurrence of back pain. On examination, he had paraspinous muscle tenderness at T11 to L5; sacroiliac joint tenderness bilaterally; and positive straight leg raising bilaterally but only mildly so. His reflexes were intact in the patellas. Dr. Nester tried Lidoderm patches, and Plaintiff indicated that it was helping before he actually got to the back door. He was to return to Dr. Nester after his course of therapy (Tr. 205,458).

Plaintiff went to therapy approximately 22 times between November 6, 2006, and April 18, 2007. According to his discharge summary, he had near full range of motion of extension at the lumbar spine and tolerated repeated flexion without difficulty. Plaintiff was independent with a home exercise program, and it was felt that he could continue to manage and progress independently. Plaintiff reported he can sit only for 15 to 20 minutes before onset of pain (Tr. 457).

On August 14, 2007, Dr. Nester completed a Multiple Impairment Questionnaire (Tr. 464-71, 608-15). He indicated he began treating Plaintiff on September 16, 2005, and most recently on January 22, 2007. He saw Plaintiff intermittently and had diagnosed low back pain (Tr. 464, 608). As support for his diagnosis, he indicated Plaintiff had weakness of the left thigh; he was unable to extend at the knee without pain; he had atrophy of the thigh muscles on the left; he had tenderness and spasms of the left side paraspinous muscles at L4-5, with straightening of lumbar lordosis; and he had limited back motion due to pain (Tr. 464-65, 608-09). Dr. Nester

8

indicated the laboratory and diagnostic tests had not been done at his office (Tr. 465, 609). He opined that he had not been able to completely relieve Plaintiff's pain with medication without unacceptable side effects. He opined Plaintiff could sit or stand/walk zero hours in an eight-hour workday (Tr. 466, 610). He also opined that Plaintiff could sit 15 minutes then had to get up and move around (Tr. 466-47, 610-11). He opined Plaintiff could lift and carry zero to five pounds occasionally, and he had significant limitation in bending, reaching, handling, fingering, and lifting (Tr. 467, 611). He opined Plaintiff's pain or other symptoms were severe enough to constantly interfere with attention and concentration, Plaintiff was capable of high stress work, and that emotional factors did not affect Plaintiff's symptoms and functional limitations. Plaintiff would need to take unscheduled breaks to rest every 15 minutes (Tr. 469, 613). He opined Plaintiff had no good days and was unable to work and Plaintiff would need to avoid temperature extremes and humidity and could do no pushing, pulling, kneeling, bending, or stooping (Tr. 470, 614).

Dr. Nester attached a letter to his questionnaire. He indicated Plaintiff's activities were limited by his back pain. He noted that "every time he comes to my office, he is fidgeting, most of the time, and looking very uncomfortable. . . . I think it's unlikely that he will be able to tolerate even sedentary activity." He opined Plaintiff was completely disabled and could not do full-time work (Tr. 456).

On August 27, 2008, Dr. Nester completed a Lumbar Spine Impairment Questionnaire (Tr. 593-99). He indicated he began treating Plaintiff on September 16, 2005, and most recently on August 27, 2008. He noted that he saw Plaintiff intermittently. He indicated Plaintiff's diagnosis as low back pain (Tr. 593). As support for his diagnosis, he indicated Plaintiff was

unable to extend at the knee without pain; he had tenderness and spasms of the left side paraspinous muscles; swelling of the left foot and occasionally the back of the thigh; atrophy of the muscles on the left; muscle weakness with extension at knee; crepitus in the left knee; bilateral positive straight leg raising; and he leaned heavily on a cane when walking (Tr. 593-94). He indicated the nature of the pain was osteoarthritis and it was located in the lower back. He noted the pain was constant, motion was a precipitating factor, and weather change affected the pain. He reported he had not been able to completely relieve the pain with medication without unacceptable side effects and opined Plaintiff could sit or stand/walk zero to one hour in an eight-hour day (Tr. 595). He could lift and carry zero to five pounds occasionally and would need to get up and move around after 10 minutes (Tr. 596). He opined Plaintiff's pain or other symptoms were severe enough to constantly interfere with attention and concentration. He opined Plaintiff was capable of low stress work and emotional factors did not affect Plaintiff's symptoms and functional limitations (Tr. 597). He opined Plaintiff would need to take unscheduled breaks to rest every 15 minutes, that Plaintiff had no good days and was unable to work. He opined Plaintiff would need to avoid temperature extremes and humidity and could do no pushing, pulling, kneeling, bending, or stooping (Tr. 598).

Veterans Administration Medical Center (VA) Records

Plaintiff sought treatment for his back pain at the VA. On October 14, 2005, a primary care note indicated that Plaintiff presented complaining of back pain which he indicated had been present since he was discharged from the military (Tr. 514). Plaintiff complained of low back pain with numbness radiating into both legs when driving a semi-truck. On examination, he had positive straight leg raising. His muscle strength was appropriate and equal, his gait was normal,

10

and there were no sensory deficits. He was diagnosed with back pain (Tr. 514). An x-ray showed reduced disc space at L5-S1 with degenerative disc, and a CT or MRI for further evaluation was recommended. Naproxyn and Flexeril were prescribed (Tr. 515, 523).

On December 14, 2005, a lumbar MRI showed loss of disc space and disc signal at L5-S1 consistent with degenerative disc (Tr. 215). Additionally, there was a disc bulge at L5-S1, with no compromise of the dural space (Tr. 215).

On March 17, 2006, Dr. Michael O'Day opined Plaintiff's lumbar spinal condition was due to the in-service incidents in 1994 and 1995 as well as his history of earlier events of a repetitive cumulative trauma to the lower back. Dr. O'Day noted, on review of the C-File, he found two entries relating to the Plaintiff's lumbar spine being acutely involved with spasm and treated conservatively on July 27, 1994 and December 13, 1995. One of the entries mentioned a fall (Tr. 220, 221).

On June 6, 2006, Plaintiff complained of back spasms for the last four or five weeks (Tr. 580). He stated his current medication was not helping (Tr. 580). Flexeril was added to Plaintiff's treatment plan (Tr. 580).

On August 2, 2006, a primary care physician outpatient note indicated Plaintiff maintained compliance with his medication. Plaintiff indicated Naprosyn was not very helpful, and that he used Flexeril and Naprosyn every day (Tr. 576). Plaintiff's dosage of Naprosyn was changed (Tr. 577).

On March 1, 2007, Plaintiff contacted his case manager and requested an increase in Cyclobenzaprine because his back pain was worsening; he also requested a cane to assist him in getting up from a sitting position or the tub (Tr. 427). He indicated his pain was a level seven

before taking Naproxen and Flexeril, and went down to a five after medication (Tr. 427).

On March 6, 2007, Plaintiff went to a physical therapy consultation (Tr. 422). He reported increased pain across his lower back area with prolonged standing and walking (Tr. 422). No gait abnormality was noted (Tr. 422). It was determined that he exhibited the need for a cane for safe ambulation for household and community distances. A metal adjustable cane was issued, and Plaintiff was instructed on its use (Tr. 422). On March 8, 2007, at a physical medicine rehabilitation consultation, Plaintiff complained of difficulty getting out of the bathtub and off the toilet (Tr. 420). He had 80 percent of full motion in all extremities and grossly normal strength. Various equipment, including grab bars, a hand held shower, a shower chair, and a raised toilet seat were ordered (Tr. 421).

On April 5, 2007, a primary care note indicated Plaintiff wanted an increase in his back pain medication (Tr. 415). He was advised Flexeril could be increased but not Naprosyn; Plaintiff could take Tylenol between doses if needed (Tr. 416-17).

On November 23, 2007, a primary care note indicated Plaintiff complained of some back pain and noted his medication helped a lot (Tr. 473). The impression was hypertension, stable, and back pain, stable with medications. It was noted Plaintiff did not meet the criteria for major depressive disorder and had no symptoms requiring additional intervention (Tr. 475).

On May 2, 2008, Plaintiff arrived at the VA, walking with a cane (Tr. 488). He complained of lower back muscle spasms and indicated his Cyclobenzaprine was due to run out that week and Naproxen and Cyclobenzaprine had not relieved his pain. He requested a stronger intervention from the primary care physician to tie him over until he obtained more medication (Tr. 488). Dr. Bhagavan Josyula gave Plaintiff an injection of Toradol for low back pain (Tr.

12

487).

On June 3, 2008, a primary care note indicated Plaintiff was grieving the loss of his wife who had passed away in March 2008; he indicated he could "deal with it for now" and did not need to talk to a psychologist. Plaintiff complained of lower back pain and spasms which came and went. He requested an injection of Toradol for pain (Tr. 546). On examination, he had lumbar paravertebral tightness and tenderness bilaterally (Tr. 547). He was given an injection of Toradol (Tr. 550). On June 4, 2008, Plaintiff reported that while at rest his lower back muscles began to spasm (Tr. 555). According to a note, which appears to be from June 2008, Plaintiff had palpable spasms in the lower paravertebral muscles (Tr. 637-38).

On July 7, 2008, a lumbosacral x-ray showed disc space narrowing at L5-S1 and marginal vertebral body osteophytes at L5-S1; the impression was mild lumbar spondylosis (Tr. 628-29).

On August 4, 2008, Plaintiff was seen for a followup of hypertension and hyperlipidemia, and a rash in his groin area. He complained that his back still hurt. The report of Active Outpatient Medications noted Cyclobenzaprine was a muscle relaxant for muscle spasm (Tr. 639).

On September 2, 2008, a lumbar spine MRI showed straightening of the lumbar spine, degenerative disc disease at L5-S1, and narrowing of the spinal canal and neural foramina (Tr. 621). It was noted that Plaintiff walked well with a cane. Lumbar paravertebrals were tight with tenderness bilaterally (Tr. 640). On September 24, 2008, Plaintiff was issued a back brace (Tr. 656).

On November 12, 2008, an initial psychological evaluation was performed in order to address issues related to bereavement (Tr. 658). On examination, Plaintiff's concentration and

13

focus were intact, his memory appeared intact, and his judgment/insight appeared intact. He was tearful when talking about the death of his wife and angry when talking about his sister-in-law's attempt to sue him (Tr. 659). While symptoms of major depressive disorder were present, bereavement appeared to be more apt due to the relatively recent death of his wife. Plaintiff was to begin individual therapy (Tr. 660). On the same date, a primary care note indicated that Plaintiff received an injection of Toradol for back pain (Tr. 677).

D.    VE Testimony

At the administrative hearing, the ALJ asked the VE to assume an individual with Plaintiff's vocational profile who was limited to light exertion work; the individual could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; the individual could not climb ropes, ladders, or scaffolds; the individual should avoid concentrated exposure to extreme cold, wetness, unprotected heights, and hazardous machinery; and the individual was limited to performing no more than simple tasks and unskilled work (Tr. 24). The VE testified that the individual could not perform any of Plaintiff's past jobs (Tr. 24). However, the individual could perform 2,300 jobs in the state as an assembler and 1,000 jobs in the state as a sorter; nationally, the number of jobs would be multiplied by 48 (Tr. 25).

The ALJ added a further limitation – the individual could alternate sitting and standing up to every 30 minutes (Tr. 26). The VE indicated the jobs he identified would not be available, but there would be 1,000 jobs in the state as a bottle packer along with 500 jobs in the state as an acid strength inspector; and again, nationally, the numbers of jobs would be multiplied by 48 (Tr. 27).

If the second hypothetical which included the sit/stand option were changed to an at-will

sit/stand option, and the individual had to use a cane to stand, the VE indicated that the jobs identified would not be sustainable because the individual would not have enough fixed posture time, and also difficulty getting up and down  (Tr. 28).

If the individual required unscheduled disruptions in both the work day and the work week, the VE testified there would not be any jobs (Tr. 27).

E.     Additional Evidence Not Subject to Substantial Evidence Review

After the hearing, Plaintiff submitted additional evidence to the Appeals Council (Tr. 681-868).  Some of the evidence he submitted was before the ALJ.  He also cites to evidence, dated November 2009, indicating development of gout (Tr. 861).  In addition, he cites to various other evidence post-dating the ALJ's decision (Tr. 697-98, 730, 751, 756, 762, 824, 860).

## Analysis

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy.  The ALJ's stated reasons for rejecting the opinion of Dr. Nester are not adequately supported and the ALJ's conclusion that Plaintiff is capable of a limited range of light work is also not supported by substantial evidence.  When the ALJ's findings are not supported by substantial evidence, or are legally unsound, the reviewing court should reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or . . . the proof of disability is strong and evidence to the contrary is lacking."  Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994).  I cannot say the evidence of disability is overwhelming and that no evidence exists on the other side, therefore I am recommending remand rather than reversal.

15

I will first address the issues related to giving proper weight to the treating physicians, giving consideration to all of the evidence, and the resulting decision about Plaintiff's Residual Functional Capacity to perform a limited range of light work.

The Commissioner argues that "an ALJ is not required to have a medical opinion supporting his RFC finding" (Doc. 13, Defendant's Memorandum, p. 13). The Commissioner further contends that the ALJ reasonably gave little weight to the opinion of Dr. Nester, the long-term treating physician, because it was based on Plaintiff's subjective complaints and not on laboratory or diagnostic testing. This is an unusual case. As the Commissioner notes, no other Physician has placed any restrictions on Plaintiff other than Dr. Nester, the treating physician. The reason for this fact, however, appears to be that no other doctor gave an opinion. There was no consultative physician and the record does not even reflect any State Agency Physician or Record Reviewing Physician giving any opinion whatsoever of Plaintiff's ability to perform light or even sedentary work. The treating Physician gives an opinion which clearly would prevent Plaintiff from performing any work of any kind and there is no contest as to that conclusion. The Commissioner correctly notes that Dr. Nester did not himself conduct any X-rays or MRI's. However, the Commissioner admits, as he must, that the claimant's X-ray and MRI reveal a "loss of disc space and disc signal at L5-S1, consistent with a degenerative disc" and "a disc bulge at L5-S1" (Doc. 13, Defendant's Memorandum at 7 and Tr. 215). Another MRI showed straightening of the lumbar spine, degenerative disc disease at L5-S1, and narrowing of the spinal canal and neural foramina (Tr. 621). The Commissioner also admits that the Plaintiff installed "equipment, including grab bars, a hand held shower, a shower chair, and a raised toilet seat" (Def.'s Memo at 8). This equipment was ordered by The Veteran's Administration in connection

16

with the Plaintiff's 10% service–connected disability due to osteoarthritis of the lumbar spine (Tr. 421 and 756).

The Commissioner argues controlling weight should not be given to Dr. Nester, noting, it is error to give controlling weight to the opinion of a treating source if the opinion is not well-supported by the clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The Commissioner goes on to argue the ALJ reasonably gave little weight to the opinion of Dr. Nester because it appeared to be based on Plaintiff's subjective allegations and because Dr. Nester did not perform any laboratory or diagnostic testing (Tr. 61-62, 594, 608-09).

He points to an August 2009 note where Dr. Nester indicated that Plaintiff's activities were "severely limited by his back pain" and that "[e]very time he comes to my office, he is fidgeting, most of the time, and looking very uncomfortable. . . . I therefore, think it's unlikely that he will be able to tolerate even sedentary activity." (Tr. 456). Based on Dr. Nester's statement, in addition to his clinical findings, which included tenderness, limited back motion, and positive straight leg raising and in his treatment notes (Tr. 205, 357, 593-94, 608-09), the Commissioner argues the ALJ could reasonably conclude that the extreme limitations indicated by Dr. Nester were largely based on Plaintiff's subjective complaints. Further, to the extent that Dr. Nester indicated that Plaintiff had limitations in reaching, handling, and fingering, neither Dr. Nester's notes nor his responses on the questionnaires supported such limitations. *See* 20 C.F.R. § 404.1527(d)(3) ("Supportability. The Commissioner notes that the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Thus, continues the argument, the ALJ

17

provided reasons for not giving weight to Dr. Nester's opinion.

In the ALJ's decision he gives little weight to the disabling opinion of Dr. Nester and

discounts it in part based on the MRI evidence of record. In the opinion he notes:

> On August 14, 2007, Dr. Nester completed a Multiple Impairment Questionnaire. He indicated he first saw the claimant on September 16, 2005 and the most recent examination was January 22, 2007. The claimant was diagnosed with low back pain. Dr. Nester did not have any laboratory and diagnostic test results which demonstrated and/or which supported his diagnosis. The form indicated that in an 8-hour day, the claimant could sit or stand/walk 0 hours. He could lift and carry 1-5 pounds occasionally. The claimant had significant limitations in doing repetitive reaching, handling, fingering or lifting. Dr. Nester noted the claimant's experience of pain or other symptoms are constantly severe enough to interfere with attention and concentration. Emotional factors do not contribute to the severity of his symptoms. The claimant's impairments were expected to last 12 months. The claimant was capable of low stress work. The claimant had no good days, and was unable to work, Exhibit B19F75.
>
> Dr. Nester completed a narrative report regarding the exertional impairment questionnaire completed on August 13, 2007. The claimant had 2 visits for low back pain. He believed the claimant was completely disabled and could not do full-time or competitive work. Exhibit B13F/2-3.
>
> . . .
>
> Little weight is given to the opinion of Dr. Nester as to the claimant's capacity to work. Dr. Nester's comments are based solely on the claimant's allegations. Dr. Nester stated he did not have any laboratory and diagnostic test results which demonstrated and/or supported his diagnosis. The statement that the claimant was completely disabled and could not do full-time or competitive work is reserved for the Commissioner.
>
> The claimant has been seen at the Veteran's Administration. An MRI in December 2005 indicated disc bulge centrally at L5-S1, Exhibit B1F/3. An x-ray of the claimant's feet revealed normal arches, Exhibit B1F/4. An MRI of the claimant's lumbar spine in September 2008, compared to a December 2005 MRI, notes degenerative disc disease at L5-S1. There is minimal narrowing of central and foraminal canals, Exhibit B20F/5-6.

Tr. 61-62.

The ALJ then goes on to support his decision to give little weight to Dr. Nester because Plaintiff has not had back surgery, which is supported by the evidence, however he then notes lack of evidence of severe persistent muscle spasm or muscle atrophy due to disuse, which he points out are useful indicators to assist in making reasonable conclusions about the intensity and persistence of symptoms such as pain as it relates to the ability to work (Tr. 63). He therefore emphasizes the importance of the lack of these findings. However this completely ignores the numerous times in the record where Plaintiff is reported to either complain of spasm or was diagnosed with spasm. Further, Plaintiff was taking medication to prevent muscle spasm. Dr. O'Day noted a history of the lumbar spine being acutely involved with spasm on July 27, 1994 and December 13, 1995 (Tr. 220, 221). On June 6, 2006, Plaintiff complained of back spasms (Tr. 580). On May 2, 2008, Plaintiff complained of lower back muscle spasm (Tr. 488). On June 3, 2008, he complained of lower back pain and spasms (Tr. 546). In June 2008 a treatment note indicated Plaintiff had palpable spasms in the lower paravertebral muscles (Tr. 637-38) and Plaintiff was taking a medication which is a muscle relaxant, to treat back spasm (Tr. 639). A final example is found in the opinion of the treating physician, Dr. Nester, who noted in his August 14, 2007, Multiple Impairment Questionnaire that Plaintiff had both atrophy of the thigh muscles on the left and tenderness and spasms of the left side paraspinous muscles at L4-5, with straightening of lumbar lordosis; and limited back motion due to pain. The ALJ simply ignored this evidence.

The Commissioner argues to the extent that Dr. Nester indicated clinical findings such as spasms, weakness, atrophy, and crepitus (Tr. 464-71, 593-94, 608-15), the ALJ reasonably accommodated such by limiting Plaintiff to light work with postural limitations and a sit/stand

option (Tr. 30). I cannot agree with that conclusion.

As Plaintiff argues, an administrative law judge (ALJ) may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence. He may justifiably choose not to give controlling weight to the opinion if not sufficiently supported by objective testing.

The Sixth Circuit Court of Appeals recognizes the important role of the treating physician in the disability determination process. In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine plaintiffs only once. *See Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 526 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In fact, pursuant to agency regulations, if the Commissioner finds "that a treating source's opinion on the issue(s) of the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §404.1527(d)(2) (1997). However, the ALJ is not always bound to accept the treating physician's opinion.

If the ALJ does not give controlling weight to a treating physician's medical opinion, the ALJ should apply the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine how much weight to give the opinion, and provide "good reasons" for the weight given to the opinion. 20 C.F.R. § 404.1527(d)(2); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for h[is] rejection.").

20

Plaintiff argues that in choosing to reject a treating physician's assessment, an Administrative Law Judge may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculations, or lay opinion. Citing *Robinson v. Barnhart*, 366 F. 3d 1078, 1082 (10th Cir. 2004), citing *Watkins v. Barnhart*, 350 F. 3d 1297, 1300 (10th Cir. 2003) and *McGoffin v. Barnhart*, 288 F. 3d 1248, 1252 (10th Cir. 2002).

In his decision in this case, the ALJ points to the lack of medical evidence to support his decision which rejects the treating physician's opinion:

> "The medical records do not document that any treating physician, other than Dr. Nester has ever found or imposed any long term, significant and adverse mental or physical limitations upon the claimant's functional capacity. There is no medical evidence that the claimant has required prolonged hospitalizations since the alleged onset date of September 10, 2006.

(Tr. 63).

The record in this case contains no evaluation by any non-examining State Agency Physician and no assessment of what exertional limitations Plaintiff has. No Consultative Physician was obtained to assess Plaintiff's physical limitations. The treating physician, Dr. Nester, opines Plaintiff is severely restricted to such an extent he is incapable of any work. Plaintiff has been issued a cane and assistive devices for his bathroom by the VA on the basis of his condition which has been followed for several years by the Veterans Administration.

On the basis of the lack of medical records, the ALJ assesses Plaintiff capable of lifting and carrying up to 20 pounds and sitting and/or standing through an eight hour workday (Tr. 63). I do not find substantial evidence in the record to support that conclusion.

It is true that the treating physician does not appear to have independently obtained x-rays

21

or MRI's but there were MRI's in the possession of the Veteran's Administration, and it is unclear whether Dr. Nester had access to those MRI's and gave his opinion on the basis of their findings. No physician other than Dr. Nester has given any opinion as to Plaintiff's residual functional capacity. In light of Plaintiff's subjective complaints, use of assistive devices, and the disabling opinion of Dr. Nestor, I conclude there is not substantial evidence to support the decision of the ALJ to give little weight to Dr. Nester, and there is no substantial evidence to support the ALJ's Residual Functional Capacity Assessment. In this case the record needs to be further developed to obtain the opinion of physicians after a review of the medical record and to obtain a consultative examination of Plaintiff to determine his physical limitations. The ALJ must also address the presence of muscle spasms identified in the record.

Since the credibility assessment of the ALJ was made without a sufficiently complete record and ignores the references to spasms, medication to treat spasms and atrophy, I conclude it is not supported by substantial evidence, but it is not necessary to address this issue in further detail since remand is recommended. Once the record is complete, the ALJ assigned to the case can make an assessment of Plaintiff's credibility based on the entire record. On remand Plaintiff may augment the record to include any medical information that was not before the ALJ.

## Conclusion

For the foregoing reasons, I conclude the Commissioner has not met his burden of showing Plaintiff is capable of performing a limited range of light work. The Commissioner's decision is not supported by substantial evidence. Accordingly, I RECOMMEND[2] that:

1.  Plaintiff's motion for judgment on the pleadings (Doc. 8) seeking reversal or remand be GRANTED in part to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g).

2.  Defendant's motion for summary judgment (Doc. 12) be DENIED.

3.  The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

*s/William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2]       Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).